UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION
Case No. _____

| | |
|---|---|
| Roger Brown, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **COMPLAINT** |
| vs. ) | |
| ) | **JURY TRIAL DEMANDED** |
| Coastal Carolina University, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

COMES NOW, the Plaintiff, Roger Brown, by and through undersigned counsel, who alleges and says unto this Honorable Court the following:

## INTRODUCTION

1. This is an action seeking declaratory judgment, equitable relief, compensatory and punitive damages, costs, and attorney's fees for discrimination and retaliation in violation of the following:

    A. Title VII of the Civil Rights Act of 1964, as amended, §701 et. seq., 42 U.S.C. §2000e et seq.; along with 1991 Civil Rights Act, as amended ("Title VII") - Gender Discrimination, Race Discrimination, and Retaliation.

    B. Title IX of the Education Amendments of 1972.

    C. General Policy of the Government prohibiting retaliation for opposing all civil rights practices listed above, 29 C.F.R. §1614.101(a)&(b).

2. This Court has jurisdiction of this matter under 42 U.S.C. § 2000e-5(f), and under 28 U.S.C. §§1331 and 1343(4).

3. Pursuant to 28 U.S.C. §1391, venue is properly laid in this district because Defendant conducts substantial, systematic, and continuous business activity in this district; is subject to personal jurisdiction in this district; and, because all of the acts underlying this lawsuit occurred in this district.

4. Compensatory and punitive damages are both sought pursuant to the 1991 Civil Rights Act, et seq. as amended, as well as the 1964 Civil Rights Act, Title VII of the 1964 Civil Rights Acts.

5. Furthermore, Plaintiff seeks attorney's fees for the bringing of this action pursuant to the 1976 Civil Rights Attorney's Fees Act and other appropriate attorney fees statutes authorized by law.

6. Plaintiff is an African American male resident of Conway, South Carolina.

7. Plaintiff is informed and believes that Defendant, Coastal Carolina University, (hereinafter "CCU"), is a public liberal arts institution located in Conway, South Carolina.

8. Plaintiff is informed and believes that Defendant, at all times relevant to the allegations in this complaint, authorized to and did waive any immunity from civil liability by purchasing liability insurance, either by contract with an insurance company of by participation in an insurance risk pool that covers claims raised in this lawsuit.

9. Defendant is an employer within the meaning of 42 U.S.C. §2000e-(b), because it is engaged in an industry affecting commerce, who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

10. Plaintiff filed two (2) discrimination complaints with the Equal Employment Opportunity Commission:

    A. Plaintiff initially filed EEOC Complaint 436-2022-01297, alleging discrimination based on sex, race, and retaliation, as he was falsely accused of sexual harassment, suspended, and terminated April 29, 2022, while his accusers received favorable treatment. The Plaintiff has exhausted all administrative remedies as the Equal Employment Opportunity Commission issued a Notice of Right To Sue regarding this claim on February 13, 2024.

    B. Plaintiff next filed EEOC Complaint 436-2024-00312, alleging retaliation after engaging in protected activity, when his termination was reversed by the State Grievance committee on November 7, 2022, but Defendant would not allow Plaintiff to return to work until April 1, 2024. The Plaintiff has exhausted all administrative remedies as the Equal Employment Opportunity Commission issued a Notice of Right To Sue regarding this claim on April 25, 2024.

11. Plaintiff has complied fully with all prerequisites to jurisdiction in this Court and brings this action within ninety (90) days of the receipt of EEOC Notices of Right to Sue.

## STATEMENT OF FACTS

12. Plaintiff, a current employee of Defendant, has experienced discrimination and retaliation surrounding false claims of sexual harassment, a reversal of the termination decision, and the failure of Defendant to honor and execute the decision of the state grievance committee.

13. Plaintiff has been employed with Defendant from January 16, 2019 to April 29, 2022 and again from April 1, 2024 to the present after an order of reinstatement issued by the State Grievance Committee.

14. Plaintiff worked as part of the custodial staff and most recently held the position of Quality Assurance Coordinator.

15. Plaintiff was performing satisfactorily for Defendant, received positive performance reviews or evaluations, and was not under the threat of probation suspension or termination before false allegations were made by coworkers.

16. The circumstances surrounding Plaintiff's discharge from employment are as follows:

    A.  On October 21, 2021, Plaintiff began experiencing pressure from the Senior Director of Campus Environments to delegate his work duties and daily assignments to others. Plaintiff was not overwhelmed, nor had he communicated to anyone that he was overwhelmed by his work duties or daily assignments.

    B.  Plaintiff complied with the Senior Director's direction to delegate and taught his subordinates, Project Leader Quality Assurance (female) and the Quality Assurance Specialist (female) how to perform small administrative tasks that

were a part of his work duties and daily assignments. Plaintiff believed Defendant was trying to give other employees Plaintiff's job duties.

C. However, Plaintiff began receiving communications from around campus concerning issues resulting from his delegated work duties and daily assignments not getting completed.

   1. In either the months of October or November of 2021, the Senior Director of Campus Environments became aware of the Project Leader Quality Assurance's misuse of a University vehicle. The Senior Director of Campus Environments brought the issue to the attention of the Plaintiff and asked him to address it.

D. On December 14, 2021, Plaintiff's subordinates, the Project Leader Quality Assurance (female) and the Quality Assurance Specialist (female) walked out early on a work event without permission.

E. On January 7, 2022, Plaintiff had a meeting with the Project Leader Quality Assurance and the Quality Assurance Specialist to address the work performance issues and the incident that took place on December 14. The Project Leader Quality Assurance was insubordinate and was asked to leave.

F. Plaintiff requested a meeting between himself, the Senior Director of Campus Environments, and Project Leader of Quality Assurance.

G. On January 10, 2022, the Senior Director of Campus Environments informed Plaintiff that the Project Leader Quality Assurance was stepping down from her position; therefore Plaintiff did not participate in the meeting.

      H.      On January 11, 2022, the Senior Director of Campus Environments met with the Project Leader Quality Assurance.

      I.      On January 12, 2022, the Vice President of Auxiliary Enterprises (Caucasian) and Senior Director of Campus Environments placed Plaintiff on Suspension pending an investigation into "inappropriate actions towards other employees."

      J.      Plaintiff was caught off guard and confused in a suspension meeting where he endured conduct he found to be demeaning, belittling, and designed to trigger a fight or flight response. Plaintiff believed the rush to judgment and other overly hostile conduct experienced at the suspension meeting were racially motivated and exhibited preferential treatment to female employees; and Plaintiff filed a complaint against the Vice President of Auxiliary Enterprises.

      K.      On April 29, 2022, Defendant discharged Plaintiff without an equitable investigation that was fair for both the accuser(s) and Plaintiff, the falsely accused. The termination was retroactive to the date of his suspension January 12, 2022. Project Leader Quality Assurance remains in her position as of the date of this filing.

17. Plaintiff filed a charge of discrimination on August 1, 2022 and amended the charge on July 5, 2023.

18. Plaintiff grieved his termination through the State Employee Grievance Committee. And on November 7, 2022, the Committee issued a Final Decision overturning

Plaintiff's termination, concluding that the record did not contain substantial evidence to support Plaintiff's termination.

19. Specifically the Grievance Committee found substantial evidence to support Plaintiff's allegation that Plaintiff's subordinates lodged complaints against Plaintiff in retaliation for his discipline of their poor work performance.

20. Plaintiff was to be returned to work on November 7, 2022, based on a successful grievance appeal. Plaintiff should have also received back pay from the effective date of termination, January 12, 2022 to the date of reinstatement.

21. Defendant, however refused to reinstate Plaintiff and instead intentionally prolonged Plaintiff's return to work by filing an appeal of the Grievance Committee decision to the Administrative Law Court. During the period of appeal, Defendant refused to reinstate Plaintiff.

22. Plaintiff filed a second charge of discrimination on April 13, 2024 regarding further discrimination and retaliation.

23. On March 6, 2024, the Administrative Law Court affirmed the decision of the State Grievance Committee to overturn Plaintiff's termination.

24. Plaintiff was finally reinstated to work on April 1, 2024.

25. Defendant failed to treat Plaintiff in a manner equal to female employees and made a rush to judgment with respect to suspension and termination of Plaintiff.

26. Defendant suspended and then terminated Plaintiff in a degrading manner when Plaintiff was removed despite evidence that challenged the accuser's credibility, despite the proximity of the accuser's false complaints to their discipline, and despite

      positive work history with Defendant. Defendant treated Plaintiff differently on the basis of sex, race and in retaliation for his complaints.

27. After Plaintiff engaged in protected activity of making a complaint internally and filing an initial complaint with the EEOC, Defendant intentionally delayed Plaintiff's return to work after a successful State Grievance Committee decision November 7, 2022, by filing Motion for Reconsideration and Appeal of the Committee's decision. This delay caused Plaintiff's reinstatement to be pushed from November 7, 2022 to April 1, 2024.

28. Plaintiff is aware of other employees who were not black males and who were not suspended and terminated and delayed reinstatement for policy violations.

29. Defendant cannot articulate a legitimate business reason for the unequal treatment of Plaintiff in comparison to other employees who were not black males, such as rushed judgment of Plaintiff, the delayed reinstatement and the decision to terminate Plaintiff despite evidence that the accusations against him were false.

30. Defendant was found to have improperly suspended and terminated Plaintiff by the State Grievance Committee; thus proving Defendant's stated "business reason" for mistreatment of Plaintiff is pretext.

31. Defendant's facially neutral policies and procedures were applied in a discriminatory and retaliatory manner, that was improper and violated Defendant's own practice and standards and in a manner which had a disparate impact on Plaintiff.

32. As a result of the acts of discrimination and retaliation within Defendant's employment practices and work environment, Plaintiff has suffered loss of

employment position, compensatory damage, emotional harm and distress, financial distress, as well as harm to his personal and professional reputation and loss of prospective employment relationships.

## COUNT I
## (TITLE VII VIOLATION - Sex, Race and Retaliation)

33. Plaintiff repeats and realleges each and every allegation contained in preceding paragraphs of this Complaint.

34. Plaintiff, a black male employee of Defendant, was performing satisfactorily and was not under the threat of probation, suspension and termination.

35. Plaintiff was performing his job duty by providing discipline to female subordinates; those subordinates immediately after receiving discipline made false allegations of sexual harassment.

36. Defendant immediately suspended Plaintiff, failed to perform a thorough investigation and/or properly weigh evidence received, and then proceeded to delay Plaintiff's return to work after the state overturned his termination.

37. Defendant held Plaintiff to a standard different from other employees who were not black males with respect to policy violations, discipline and termination.

38. Plaintiff engaged in the protected activity of making internal complaints of discrimination after his suspension and filing EEOC complaints in August 2022 and April 2024.

39. Defendant knew or should have known that Plaintiff engaged in protected activity.

40. Defendant then retaliated against Plaintiff for his complaints by terminating him and then intentionally causing a delay of Plaintiff's reinstatement to work.

41. Plaintiff is aware of other employees who were not black males and who were not subjected to suspension and termination for policy violations.

42. The foregoing actions of Defendant and its representatives discriminated and retaliated against Plaintiff on the basis of race and sex all in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2.

43. Plaintiff has suffered injury, including immediate and irreparable injury as described in the statement of facts, as a direct and proximate result of the Defendant's violation of all said rights as alleged herein.

## COUNT II
## (TITLE IX VIOLATION)

44. Plaintiff repeats and realleges each and every allegation contained in preceding paragraphs of this Complaint.

45. Title IX of the Education Amendments of 1972 applies to an entire school or institution if any part of that school receives federal funds; hence, athletic programs are subject to Title IX of the Education Amendments of 1972, even though there is very little direct federal funding of school sports.

46. Upon information and belief, Defendant CCU receives millions of dollars in federal funding for research and development, as well as student financial aid.

47. Both the Department of Education and the Department of Justice have promulgated regulations under Title IX that require a school to adopt and publish grievance procedures providing for the prompt and equitable resolution of complaints alleging any action which would be prohibited by Title IX or regulations thereunder. 34 C.F.R. § 106.8 (Dep't of Education); 28 C.F.R. § 54.135 (Dep't of Justice).

48. Such prohibited actions include all forms of discrimination based on sex.

49. The procedures adopted by a school covered by Title IX must not only "ensure the Title IX rights of the complainant," but must also "accord due process to both parties involved."

50. The "prompt and equitable" procedures that a school must implement to "accord due process to both parties involved" must include, at a minimum:

    A. "Notice of the procedure, including where complaints may be filed";

    B. "Application of the procedure to complaints alleging [sexual] harassment.";

    C. Adequate, reliable, and impartial investigation of complaints, including the opportunity to present witnesses and other evidence";

    D. "Designated and reasonably prompt timeframes for the major stages of the complaint process"; and

    E. "Notice to the parties of the outcome of the complaint...".

51. A school also has an obligation under Title IX to make sure that all employees involved in the conduct of the procedures have "adequate training as to what conduct constitutes sexual harassment, which includes alleged sexual assaults."

52. Based on the foregoing, CCU deprived Plaintiff, on the basis of his sex, rights to due process and equal protection through the improper administration of and/or the existence, in its current state, of CCU's guidelines and regulations.

53. Based on the foregoing, CCU shut Plaintiff out of the CCU's community by denying a fair process even with a delayed investigation, improper assessment of evidence and delayed reinstatement to work, which was all to Plaintiff's detriment.

54. Defendant violated Title IX by failing to conduct a full and fair investigation to the matter, denying confrontations, full disclosure of information, Administration taking sides against Plaintiff.

55. CCU conducted its investigation of Plaintiff subordinate's allegation in a manner that was biased against the black male being accused, despite the obvious truth of consensual communications between parties, and a complaint being made against Plaintiff after Plaintiff had to issue discipline.

56. Throughout the process, CCU officials treated Plaintiff as "guilty before proven innocent." Therefore Defendant denied Plaintiff, as a black male employee, fundamental due process by being investigated under a cloud of presumption of guilt.

57. CCU failed and/or refused to follow its own policies and procedures for Plaintiff as the black male accused of sexual harassment when it found Plaintiff responsible for improper behavior based on sex against subordinates despite overwhelming facts to the contrary.

58. Based on the foregoing, CCU imposed discipline on Plaintiff that was unwarranted and unjustified and without proper consideration of his clean disciplinary history and without proper consideration of the evidence of Plaintiff's innocence.

59. As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

**WHEREFORE**, Plaintiff respectfully prays that this Court:

A. Award Plaintiff costs of this action, together with reasonable attorney's fees as provided by 42 U.S.C. §12205 and 42 U.S.C. §12117; under 42, U.S.C.§2000e-5(k), 29 U.S.C.A. § 2617(a)(3);

B. Direct Defendant to pay Plaintiff compensatory damages; damages for his emotional distress, mental anguish and humiliation; and other compensatory and punitive damages allowable under 2 U.S.C. §1311(b)(3) and 42 U.S.C. §12117(a) 29 U.S.C.A. § 2617(a)(1)(A)(i) and 29 U.S.C.A. §§ 2617(a)(1)(A)(ii) and (a)(1)(B) in the amount to be determined by a jury;

C. Additional liquidated damages in the amount of the above-requested award, pursuant to 29 U.S.C.A. § 2617(a)(1)(A)(iii); and,

D.  Award Plaintiff such other and further relief as this Court deems just and proper.

WUKELA LAW FIRM

By:    s/ Pheobe A. Clark     
Pheobe A. Clark, Federal ID No. 9888  
Post Office Box 13057  
Florence, SC  29504-3057  
Phone: (843) 669-5634  
Fax:  (843) 669-5150

May 13, 2024